IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SOMDATTA BANERJEE,<br><br>               Plaintiff,<br><br>vs.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES and LOREN K. MILLER, in their official capacity as Director of the Nebraska Service Center,<br><br>               Defendants. | 4:21-CV-3293<br><br>MEMORANDUM AND ORDER |

      This matter is before the Court on the motion for a temporary restraining order filed by the plaintiff, Somdatta Banerjee. The Court will deny the plaintiff's motion because she neither complied with the procedural requirements for a temporary restraining order nor met her substantive burden to prove her right to equitable relief.

## I. DISCUSSION

      When deciding whether to issue a temporary restraining order or a preliminary injunction, the Court weighs the four *Dataphase* factors: (1) the probability that the movant will succeed on the merits, (2) the threat of irreparable harm to the movant, (3) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties, and (4) the public interest. *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). No single factor is dispositive, and the burden

is on the movant to establish the propriety of the remedy. *Baker Elec. Co-op., Inc. v. Chaske,* 28 F.3d 1466, 1472 (8th Cir. 1994).

### 1. PROPRIETY OF EX PARTE RELIEF

But while a temporary restraining order and preliminary injunction are weighed by the same substantive standards, there are additional procedural requirements for a temporary restraining order that have not been satisfied by the plaintiff. Specifically, the Court may issue a temporary restraining order—that is, an order without written or oral notice to the adverse party or its attorney—only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; *and*
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). The plaintiff made neither showing: while she argues that she will suffer harm if the Court doesn't act before November 1, 2021, she doesn't explain why the government couldn't be heard in opposition, nor does she explain any efforts to provide notice. *See* filing 4; filing 4-1.

The plaintiff's motion is, expressly and quite specifically, a motion for an "Emergency Temporary Restraining Order." Filing 4. But she didn't satisfy the procedural requirements for such an order. So, her motion can be denied on that basis alone.

2. PROPRIETY OF INJUNCTIVE RELIEF

But for the sake of completeness, the Court also finds that the plaintiff hasn't made the substantive showing she would need to obtain such relief. The plaintiff claims, briefly, that her green card applications have been unreasonably delayed by USCIS, and she seeks injunctive relief to "hold" a green card while her claim is adjudicated. *See* filing 1; filing 4. The Court has previously addressed the statutory framework from which the plaintiff's claims arise at some length, in the context of dismissing other green card applicants' claims for injunctive relief. *See Bansal v. U.S. Citizenship and Immigration Servs.*, No. 4:21-CV-3203, 2021 WL 4553017, at 1-2 (D. Neb. Oct. 5, 2021). The Court need not revisit that background at length to explain why the plaintiff's arguments here have many of the same defects.

(a) Likelihood of Success on the Merits

In deciding whether to grant a preliminary injunction, likelihood of success on the merits is the most significant factor. *Laclede Gas Co. v. St. Charles Cty.*, 713 F.3d 413, 419-20 (8th Cir. 2013). A party seeking injunctive relief need not necessarily show more than a 50 percent likelihood that it will prevail on the merits. *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008). But the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013). And the Court finds little likelihood of success on the merits here.

To start with, as the Court has previously explained, the Court questions its own jurisdiction to review the decision to issue (or not issue) a green card, because that's a discretionary decision insulated from the Court's review by the Immigration and Naturalization Act and the Administrative Procedure Act. *Bansal*, 2021 WL 4553017, at 5-6. The Court has also found, based on the factors

articulated in *Telecomms. Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984), "little likelihood that the plaintiff would succeed in showing unreasonable agency delay, even if the Court had jurisdiction to consider the claim." *Bansal*, 2021 WL 4553017, at 9. The plaintiff here fares little better.

(b) Irreparable Harm

Nor has the plaintiff shown a likelihood of irreparable harm. A preliminary injunction cannot issue without a showing of irreparable harm. *Dataphase*, 640 F.2d at 114 n.9. To show a threat of irreparable harm, the movant must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief. *Roudachevski*, 648 F.3d at 706. Stated differently, the harm "must be actual and not theoretical." *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986).

The plaintiff's claims are premised on the Visa Bulletins issued by the U.S. Department of State's Bureau of Consular Affairs for October 2021 and November 2021. *See* filing 4-1 at 3 n.2 (citing U.S. Dep't of State, Bureau of Consular Affairs, Visa Bull. No. 58 vol. X (Sept. 2021) ("Immigrant Numbers for October 2021", *i.e.* the "October Bulletin"), https://bit.ly/3B3KQzt; U.S. Dep't of State, Bureau of Consular Affairs, Visa Bull. No. 59 vol. X (Oct. 2021) ("Immigrant Numbers for November 2021", *i.e.* the "November Bulletin"), https://bit.ly/2XDQevu). But those documents don't support the argument the plaintiff premises on them.

The Visa Bulletin, in its own terms, "summarizes the availability of immigrant numbers" for each month "for: 'Final Action Dates' and 'Dates for Filing Applications,' indicating when immigrant visa applicants should be notified to assemble and submit required documentation to the National Visa Center." *See* October Bulletin at 1. In other words, it tells potential visa applicants when they can apply for each category of visa: "individuals seeking

to file applications for adjustment of status with USCIS in the Department of Homeland Security must use the 'Final Action Dates' charts" contained in the Bulletin "for determining when they can file such applications." *Id.*

If the demand reported by consular officers for visas in a particular category can be satisfied by the number of visas available, the category is listed as "current" and applications are open. *See id.* at 1, 5, 8. But if demand is higher than supply (as is often the case), the Bulletin includes a "final action date" for the oversubscribed category and only applicants with a priority date earlier than the final action date may submit applications. *Id.* at 5, 8. The November Bulletin contains a significant retrogression of the final action date for Chinese and Indian applicants in the third employment-based category. *See* November Bulletin at 8; *compare* October Bulletin at 5 *with* November Bulletin at 5. For October, applicants in that category with a priority date before January 8, 2014 may apply. October Bulletin at 5. But for November, that date has been pushed back to January 22, 2012. November Bulletin at 5.[1]

The plaintiff's priority date falls in that retrogressed period. Filing 1-2 at 1. The plaintiff contends that the retrogression means that her application "will be thrust into a backlog that may take decades to clear." Filing 4-1 at 2. But the materials currently before the Court don't support that contention.[2] The

---

[1] Nothing before the Court clearly explains *why* retrogression was necessary—the November Bulletin simply says that it was "a direct result of extraordinarily heavy applicant demand for numbers, primarily by Citizenship and Immigration Services offices for adjustment of status cases." *Id.* at 8. But it may be related to the "rollover" of formerly family-sponsored green cards that occurred at the end of FY2021. *See Bansal*, 2021 WL 4553017, at 1-2.

[2] And to be clear—the materials before the Court are all the Court is adjudging. Perhaps the retrogression of the final action date does affect the processing of pending applications with a priority date during the retrogressed period—but there's nothing in the record as it stands to

Bulletins simply address when an applicant can submit their documentation to the National Visa Center—they do not clearly address the status of pending applications. And the plaintiff relies entirely on the retrogression described in the Bulletins—she doesn't direct the Court to any other evidence, law, or regulation clearly discussing retrogression's effect on pending applications.[3]

And that brings the Court back to whether the plaintiff has shown that irreparable injury is *likely* in the absence of an injunction. *Winter v. Nat. Res. Defense Council, Inc.,* 555 U.S. 7, 22 (2008). And she hasn't, because she hasn't shown that at the end of this month, her status will be affected in any way. The materials before the Court indicate that new applicants with priority dates in the retrogressed period won't be allowed to get in line for adjustment of status, but nothing before the Court demonstrates that the plaintiff will be kicked out of the line she's already in.[4]

---

show that. (Which is another reason that granting *ex parte* relief—without input from the defendants, who would be in a position to explain their procedures—is unwarranted.)

[3] The Court assumes, for these purposes, that the plaintiff's materials are documentarily complete. *See, e.g.*, November Bulletin at 9.

[4] Or, at the very least, that she has some sort of vested interest in her place in that line that entitles her to keep it at the expense of other potential immigrants. It may be, as the plaintiff suggests, that her green card won't issue until the final action date stated in the Bulletin catches up to her priority date. But the final action date is established based on visa availability, and the plaintiff doesn't ask the Court to do anything about visa availability. (Even if it could. *See Bansal,* 2021 WL 4553017, at 3-4). If the real problem is visa availability, then the effect of retrogression is just to alter the government's plan for distributing the limited supply of visas, so applicants with earlier priority dates move up in line. And the plaintiff doesn't provide the Court with a legal basis to make a visa available to her that wouldn't otherwise be available, nor does she provide the Court with a legal basis to make a visa available to her that would otherwise be available to someone else.

(c) Balance of Harms and Public Interest

Finally, the Court must consider the balance of harms between the parties, and the public interest. *See Dataphase*, 640 F.2d at 114. Because a preliminary injunction is an extraordinary remedy never awarded as of right, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Winter*, 555 U.S. at 24.

But even if some injury to the plaintiff is conceded, the public interest weighs against the Court's interference. The plaintiff is essentially asking the Court to permit her to have her cases treated differently from thousands of other similarly situated applicants because she decided to sue. It's difficult to even imagine, however, the disruptive effect on the courts and the immigration system of permitting litigious plaintiffs to reserve visas or "cut in line" ahead of other applicants, because *every* potential immigrant would have to protectively become a litigant. In the absence of any showing that *this plaintiff* is distinguishable from any other hopeful immigrant in the admittedly regrettable backlog of applications, then the Court cannot help but conclude that the public interest would be ill-served by *ad hoc* judicial intervention. Accordingly,

IT IS ORDERED that the plaintiff's motion for temporary restraining order (filing 4) is denied.

Dated this 21st day of October, 2021.

BY THE COURT:

John M. Gerrard
United States District Judge